Stewart, J.
The facts are substantially undisputed.
On May 28, 1936, Ernest P. Lenihan, grandfather of plaintiff and father of defendant, entered into a *333 written declaration of trust, which was modified on June 17, 1936.
The trust agreement provides for the deposit by Ernest P. Lenihan, the settlor, of securities with the trustee and grants broad investment powers to the trustee.
During the time with which this case is concerned, the trustee was City Bank Farmers Trust Company.
The declaration of trust provides that, during the life of the settlor, the trustee shall pay the net income of the trust to him; that after the settlor’s death the trustee shall pay the net income to his widow; and that after the death of both of them the trustee shall pay specified percentages of such net income to named beneficiaries, among whom is included plaintiff, to the extent of eight and three-quarters per cent of such income during the life of settlor’s sister. The balance of the income, after the death of settlor and his wife, is to be distributed among settlor’s sister and his four children.
The trust provides that, if income should become applicable to the use of plaintiff, the trustee shall apply such income to her use “by paying the same to the settlor’s said son, Theodore W, if he shall be living.” It is provided that, in the event of the death of Theodore, such funds shall be paid to the settlor’s daughter, Anna, or if she is not living, to settlor’s son-in-law, Eugene E. Cashman, if living, “to be used by the settlor’s said son, or his said daughter, or his said son-in-law, as the case may be, as he or she may deem necessary or advisable properly to provide for the care, support, education and comfort of the settlor’s said granddaughter”; that “any excess income not used for the care, support, education and comfort of the said Barrie Caswell shall be accumulated until she shall reach the age of 21 years, and thereupon such *334 accumulations shall be paid over to her”; and that “the trustee shall not be required to inquire into the distribution made by the settlor’s said son, Theodore W., or the settlor’s said daughter, Anna Pauline, or the settlor’s said son-in-law, Eugene R. Cashman, as the case may be, of any income so paid to him or her, and the receipt of the settlor’s said son, or the settlor’s said daughter, or the settlor’s said son-in-law, for any income so paid to him or her shall be a complete discharge to the trustee with respect to such income.”
The trust agreement provides also that in the event of the death of Theodore, Anna, and Eugene, during plaintiff’s minority, the trustee “in its absolute and uncontrolled discretion” can apply so much of the income applicable to the use of plaintiff as the trustee “in its absolute and uncontrolled discretion” deems will be in accordance with the settlor’s wishes and shall accumulate the balance and pay it over to plaintiff on her coming of age.
It is provided also that, in case the trustee thus administers the trust, it, in determining how much of the income it should apply to the use of plaintiff, shall consider that the intention of the settlor was that, if plaintiff should be placed in the custody of her father during her minority, the entire expense “of providing for the proper education, care, comfort and support of such child shall devolve upon her father, and no part of the income of the trust fund shall be used for such purpose unless in the sole and uncontrolled discretion of the trustee the said Barrie Caswell shall be in need of assistance for her education, care, comfort and support, in which event the trustee may use so much of the income applicable to the use of the said Barrie Caswell for such purpose as it deems advisable, and shall be absolutely protected in so doing.”
*335 The trust provides further that the trustee, in his discretion, may make payment of the income, vesting in and payable to a minor, to such minor’s parent or guardian ‘ ‘ as the trustee in his discretion believes will benefit such minor”; and that “any payment hereinabove authorized shall be a full discharge to the trustee with respect-thereto. ”
After individual provisions granting broad discretionary authority to the trustee, it is provided that the decision of the trustee “with respect to the exercise or nonexercise by him of any discretionary power hereunder, or the time or manner of the exercise thereof, made in good faith, shall fully protect him and shall be conclusive and binding upon all persons interested in the trust estate.”
At the time of the creation of the trust in 1936, plaintiff’s mother and father, who was the mother’s second husband, had been divorced and her mother had remarried-
In 1937, the legal custody of plaintiff was, by court order, awarded to her father.
In 1942, income from the trust became payable to plaintiff and, in accordance with the trust, the trustees began paying sums of money to defendant for the use of plaintiff, which payments continued until May 6, 1952, when plaintiff became of age. The income was thereafter payable directly to her.
The total amount of money paid to defendant by the trustee was $11,739.54, which made an average of less than $100 per month during the period of the payments.
It is the application of this sum which is the subject matter of this action.
At the time of the beginning of the payments by the trustee to defendant, plaintiff’s mother was living with her fourth husband. He was the father of a boy, *336 plaintiff’s half brother, but from a financial standpoint he was unproductive, and the burden of maintaining a home fell upon plaintiff’s mother.
As observed, her father had the legal custody of plaintiff, but, nevertheless, plaintiff’s home was with her mother during most of the period when defendant was receiving money from the trustee on plaintiff’s behalf.
During a part of this 10-year period, plaintiff attended various boarding schools away from home, but when she was not in school her home was with her mother except for certain trips abroad with her father, and vacations in 1948 and 1949 in Colorado.
All the funds which defendant received from the trustee to the use of plaintiff he delivered to plaintiff’s mother, and defendant contends that in good faith he was expending this money for the proper education, care, comfort and support of plaintiff. The contention is made that it was essential that plaintiff have a home and that, although her custody was legally with her father, her home was with her mother. In fact, the father himself testified that he paid plaintiff’s mother $50 per month whenever plaintiff was at home with her mother, but not otherwise.
Not only did defendant pay the less than $100 per month trust income to plaintiff’s mother as a contribution to maintain a home for plaintiff, but, in addition, he paid considerable money out of his own pocket for that purpose, and he paid to plaintiff’s father the sum of $3,654.50 as contributions or advancements for the schooling and education of plaintiff.
In this situation, the Court of Appeals ordered “that this cause be remanded to Common Pleas Court with instructions to proceed with a hearing in accounting to determine how much of the funds, if any, in the total sum of $11,739.54 which defendant received *337 from the trustee were expended for plaintiff’s benefit within the purposes of the trustor as above defined, it being- the judgment of this court that payment of funds to plaintiff’s mother does not, standing alone, bring the expenditure within the terms of the trust.” The court further ordered that judgment be entered in favor of plaintiff for that portion of the trust funds received by defendant for plaintiff’s benefit which was not expended for her benefit under the terms of the trust as above outlined and as set forth in the court’s opinion.
It was the theory of the Court of Appeals and is of plaintiff that since defendant was a trustee he could not, under the law, disregard the interests of his beneficiary; that the standard of care required of him is the highest known to law; and that he was under obligation to be particularly diligent and careful to so act that his minor beneficiary might receive the fullest benefits possible intended by the settlor.
The court further was of the opinion that the payments of the trust income by defendant to plaintiff’s mother were a diversion of that income for the benefit of the mother and that no diversion of trust funds from the purposes established by the trust is allowable.
Plaintiff asserts that defendant had no more discretion to give plaintiff’s money to defendant’s sister than he had discretion to “donate it to the Society for the Preservation of Vanishing Hottentots.”
We would be in substantial agreement with the opinion of the Court of Appeals and the theory of plaintiff if we did not disagree with the premise upon which both rest.
We agree that a fiduciary must exercise the utmost care not to divert the funds entrusted to him from the purposes of the trust, and that he is practically an *338 insurer against any personal gain or enrichment to himself from funds entrusted to him solely for the benefit of another. However, we are of the opinion that defendant did not divert the money paid to him by the trustee, either to his own use or to the use of plaintiff’s mother.
It is true that plaintiff’s mother was having a difficult time maintaining her home, but plaintiff’s money was not given to her mother for the use of herself or her husband, but solely, in the judgment of defendant, for the use of plaintiff.
Plaintiff’s mother had an income, after taxes, of $3,800 per year, which she expended on the home. In addition, she expended on the home proceeds from the sale of securities which she owned, the gain she made on the sale of a larger home and the purchase of a smaller one, as well as money contributed by defendant himself from his own resources. Therefore, it seemed to defendant that he was properly expending the less than $100 a month trust income toward the support of' the home, which was plaintiff’s home and, in reality, the only one she knew or had.
Where one is an unpaid fiduciary, with the widest possible discretion as to the expenditure of the trust funds coming into his 'possession, and where he expends those funds for what he honestly believes to be the welfare of the beneficiary, within the meaning of the terms of the trust, there is no diversion of those funds because some court or the beneficiary may think that the funds could have been more wisely and judiciously expended.
Under the terms of the trust in the present case, the income is to be used by defendant as he “may deem necessary or advisable properly to provide for the care, support, education and comfort of the settlor’s granddaughter. ’ ’
*339 It would be difficult to imagine a wider discretion in a trustee.
The trust agreement provides that, if the last trustee should expend plaintiff’s income, such trustee shall consider that the intention of the settlor was that, if plaintiff should be placed in the custody of her father during her minority, then the entire expense “of providing for the proper education, care, comfort and support of such child shall devolve upon her father, and no part of the income of the trust fund shall be used for such purpose unless in the sole and uncontrolled discretion of the trustee the said Barrie Caswell shall be in need of assistance for her education, care, comfort and support, in which event the trustee may use so much of the income applicable to the use of the said Barrie Caswell for such purpose as it deems advisable, and shall be absolutely protected in so doing. ”
Assuming that this provision applies to defendant and not to the trustee named in the event that defendant and his two alternate successor trustees died, nevertheless, defendant still had sole and uncontrolled discretion as to the expenditure of plaintiff’s money for her education, care, comfort and support and is absolutely protected as to such expenditure. Of course, defendant could not donate any of plaintiff’s money coming into his hands “to the Society for the Protection of Yanishing Hottentots,” but as long as he expended it for a purpose related to the education, care, comfort and support of plaintiff, and as long as he acted therein honestly and in good faith, he can not be held to account to plaintiff for any of the funds so spent because in some other person’s judgment he should have used the funds otherwise.
There is not a scintilla of evidence as to any dishonesty, bad faith or misconduct on the part of de *340 fendant. Not only was there no personal gain to him, but, as observed, he spent more than $3,600 of his own money upon plaintiff’s education, as well as contributing from his private means to the upkeep of the only home which plaintiff knew.
We are of the opinion that the Court of Appeals was in error in remanding the cause for an accounting.
The judgment of the Court of Appeals is reversed and final judgment is rendered for defendant.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taft, JJ., concur.